UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SALIH HALUK ERBEN,

    Plaintiff,

v.                                                     CASE NO: 8:11-cv-933-T-23AEP

RAYMOND JAMES FINANCIAL,
INC., et al.,

    Defendants.
_____/

**ORDER**

Turkish national Salih Haluk Erben, a customer whose money was stolen by an employee of a bankrupt, Turkish brokerage, sues (Doc. 54) a corporate shareholder of the brokerage and two corporate parents of the corporate shareholder and alleges breach of contract, negligent supervision, and fraud. Each party moves (Doc. 82 and 83) for summary judgment.

Recognizing the difficulty of disregarding corporateness or "piercing the corporate veil" under Florida law, Erben has advanced – throughout the three complaints in this action – several alternative theories of liability in an attempt to hold at least one of the three defendants accountable for fraud committed by the employee of the non-party, Turkish brokerage. The brokerage was incorporated in Turkey as the equivalent of an American corporation, the Turkish term for which is

"anonim sirket" or, commonly, "A.S."[1] Absent the Turkish equivalent of disregarding corporateness or "piercing the corporate veil," an anonim sirket shields a shareholder from liability. None of the alternative theories succeed, so success at trial depends on Erben's establishing that the shareholder used the Turkish brokerage as a "mere instrumentality" to accomplish an ulterior, improper, or fraudulent purpose.

## BACKGROUND

During a tour of the Republic of Turkey in the late 1990's, the CEO of defendant Raymond James Financial, Inc., met the brothers Mehmet and Hasan Karamehmet, whose family owned a small stock brokerage in Turkey. After some travel to and from Turkey, RJ Financial decided to join with the Karamehmets to form a brokerage in Turkey. On November 25, 1998, RJ Financial entered a "Joint Venture and Shareholders' Agreement" with Park Yatirim Bankasi, A.S., owned by the Karamehmet family.

The November, 1998, Shareholders' Agreement memorializes the relation between RJ Financial and Park Yatirim and provides for the incorporation of a "joint stock company, to be formed and incorporated by the Parties under the laws of the Republic of Turkey." (Doc. 83-32 at 4) Section 3.1 states, "The Parties have agreed that they or their respective subsidiaries should set up a joint venture company in the

---

[1] An anonim sirket is commonly designated a "joint stock company" in Turkey.

form of a joint stock company under the laws of Turkey with the trade name of 'Park-Raymond James Menkul Kiymetler, A.S.'" (Doc. 83-32 at 7) Section 19.1 permits RJ Financial to "assign its rights under this Agreement to a subsidiary to be known as Raymond James European Holdings, Inc., which shall make the investment in the company and hold the shares of the Company, and shall exercise all other rights granted to [RJ Financial] under this Agreement." (Doc. 83-32 at 27)[2] In Section 4.1, each party agreed to contribute initial capital of $1,000,000 to supply the anonim sirket's initial capital of $2,000,000. (Doc. 83-32 at 8)

Around the same time, the parties submitted a draft of the Articles of Association to the Capital Markets Board, which approved the draft contingent on the parties injecting 620,000 YTL (the new Turkish lira), an amount apparently less than $620,000. (Doc. 83-8 at 2-4) On May 12, 1999, the parties entered an Amendment to the Joint Venture and Shareholders' Agreement, which states that "[t]he Capital Markets Board . . . has requested a change in the structure of the transaction so that, instead of organizing a new company, the Parties shall use the existing Turkish company known as Park Menkul Degerler, A.S. . . . as the joint venture entity." (Doc. 88-7 at 2) Park Yatirim owned in full Park Menkul, and "the business . . . conducted by Park Menkul [was] transferred" to another company

---

[2] Raymond James European Holdings, Inc., is a wholly owned subsidiary of the defendant Raymond James International Holdings, Inc., which is a subsidiary of the defendant Raymond James Financial, Inc. Each defendant is a Florida corporation with a principal place of business in Pinellas County, Florida.

wholly owned by Park Yatirim.  (Doc. 88-7 at 2)  The May, 1999, Amendment to the Shareholders' Agreement notes that the name "Park Menkul" will change to "Park-Raymond James Yatirim Munkul Kiymetler, A.S.", the name contemplated in the November, 1998, Shareholders' Agreement.  The amendment incorporates the Capital Markets Board's requirement that each party invest a share of the 620,000 YTL.  (Doc. 88-7 at 5)

Around the same time, the parties executed the Articles of Association.  Article One states, "A joint stock company is incorporated in the form of an intermediary organization by and among the founders whose trade names, domiciles and nationalities are given below in accordance with the provisions of the Turkish Commercial Code governing instantaneous incorporation of the joint stock companies."  (Doc. 83-3 at 2)  Article Thirty-Four provides that "[o]n matters not covered by these Articles of Association, the provisions of the Turkish Commercial Code, the Capital Market Law and the related regulations shall be applicable."  (Doc. 83-3 at 17)  Before beginning operation in the third quarter of 1999, Park-Raymond James was capitalized with 620,000 YTL, the minimum required by the Capital Markets Board and apparently about 25% of the amount contemplated in the initial shareholders' agreement.

But, in 2000, the Capital Markets Board raised the capital requirement, and Park-Raymond James, through an investment from RJ European, increased the capitalization to 1,984,000 YTL. Park Yatirim invested nothing further in 2000 because of financial trouble in the Karamehmet family. In exchange for the incremental investment from RJ European, Park Yatirim transferred to RJ European, subject to a potential "buy back," 23% of the anonim sirket's shares.

Meanwhile, the Karamehmets and RJ European quarreled, and the Karamehmets filed at least one civil action and pursued at least one criminal accusation in Turkey against the American directors of Park-Raymond James. In an effort to resolve the dispute, the shareholders, including RJ European and the Turkish shareholders, entered a July, 2003, Shareholders' Agreement. (Doc. 83-35) In exchange for an annual dividend, the Karamehmets through Park Yatirim relinquished a seat on the board of directors, the result of which was the election of three of four directors from Raymond James.

"Governed by and construed in accordance with the laws of New York without regard to conflicts of law provisions thereof," the July, 2003, Shareholders' Agreement "replaces" both the November, 1998, Shareholders' Agreement and the May, 1999, Shareholders' Agreement. (Doc. 83-35 at 9) According to Section Ten, "[S]uch earlier agreements shall be of no further force or effect." (Doc. 83-35 at 9) Also in July, 2003, the parties amended the Articles of Association, which changed

Park-Raymond James to "Raymond James Yatirim Menkul Krymetler, A.S," designated in this order as "RJ Yatirim."

Drawn to RJ Yatirim by Raymond James's reliability, prestige, and credibility, Erben opened a $6 million margin trading account and began trading in 2005 through the RJ Yatirim portfolio manager Fethi Berkan. Over the next two years, Berkan frequently invested without Erban's authorization, frequently failed to follow Erben's trading directives, and, as a consequence, generated more than a million dollars in commission. Berkan maintained a phony account statement to deceive Erben. When Erben directed Berkan to liquidate certain securities in April, 2007, little money remained in Erben's account. Around September, 2007, after some negotiation with Turkish management, Erben met with John Critchlow, who was both a board member of RJ Yatirim and an in-house attorney for RJ Financial. Later, Erben met with Turkish management and Robert Miller, who served as a board member of RJ Yatirim, as a board member of both RJ European and RJ International, and as the Vice-President of International Development for RJ Financial. Miller mentioned the possibility of a settlement, but no settlement occurred.

RJ Yatirim retained most earnings, and, as of September, 2007, RJ Yatirim's total capital equaled $12.2 million. Following a 2007 audit, Turkish authorities imposed a $7.6 million assessment for tax delinquent from 2001, and, following a 2008 audit, Turkish authorities imposed a $5.7 million assessment for tax delinquent

from 2002.  RJ Yatirim disputed the tax liability in a Turkish court.  During the litigation, the Capital Markets Board required that RJ Yatirim's report of corporate capital exclude from capital an amount equal to the tax assessments.  The demand left RJ Yatirim without sufficient capital to operate in Turkey.  Although RJ European was willing to infuse more capital (with money provided by RJ Financial), the Karamehmets refused to contribute, and RJ Yatirim entered bankruptcy in 2009.  (Doc. 83-5 at 35-40)  (Three years later, Turkey passed a tax amnesty bill that reduced the delinquency for RJ Yatirim and others.)  Erben pursues a claim in RJ Yatirim's Turkish bankruptcy, which continues.

## DISCUSSION

Erben argues initially that the shareholders established "Raymond James Yatirim Menkul Krymetler, A.S." as a New York "joint stock company" and not as a Turkish "joint stock company," that is, not as an anonim sirket.  Citing the shareholders' agreements, Erben advances this patently untenable argument because purportedly the owners of a New York "joint stock company" directly incur the liability of the company.  However, as described above and detailed in a May 20, 2013, order (Doc. 94), the summary judgment papers establish that RJ Yatirim is an anonim sirket incorporated in Turkey under the law of Turkey.  The May 20 order directs each party to submit a supplement discussing whether an anonim sirket shareholder's investment in the anonim sirket limits the shareholder's liability.

Establishing an anonim sirket's similarity to an American corporation, the defendants submit the declaration of a Turkish attorney (Doc. 98-1), the pertinent sections of three accounting guides (Docs. 98-2, 98-3, 98-4, 98-5, 98-6, 98-7, 98-8), an excerpt from the *Collier International Business Insolvency Guide* (Doc. 98-9), and an excerpt from a website of the Republic of Turkey Prime Ministry, Investment Support and Promotion Agency (Doc. 98-10). Erben submits a declaration from a Turkish attorney (Doc. 97). The submissions, all in accord, establish that, absent the Turkish equivalent of "piercing the corporate veil," an anonim sirket shareholder's investment limits the shareholder's liability. In other words, anonim sirkets "are essentially analogous to corporations." 3-42 *Collier International Business Insolvency Guide*, Turkey P. 42.02[1] (2012) (Doc. 98-9 at 2). In the pre-trial statement, the parties stipulate to Florida law's governing the disregard of corporateness. (Doc. 90 at 17)

## Disregarding Corporateness

Count Four alleges that RJ Yatirim was a "mere instrumentality" of RJ Financial, RJ International, or RJ European and that each parent corporation incurs liability for breach of RJ Yatirim and Erben's contract. As explained in three orders (Docs. 34, 51, and 76), the disregard of corporateness results only (1) if the subsidiary acts as a "mere instrumentality" of the parent and (2) if the parent engages in "improper conduct" through the organization or use of the subsidiary. *Johnson*

*Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir. 1998) (citing *Dania Jai-Alai*, 450 So. 2d at 1117-21); *17315 Collins Ave., LLC v. Fortune Dev. Sales Corp.*, 34 So. 3d 166 (Fla. 3d DCA 2010) (quoting *Ocala Breeders' Sales Co. v. Hialeah, Inc.*, 735 So. 2d 542, 543 (Fla. 3d DCA 1999)). "Improper conduct is present only in 'cases in which the corporation was a mere device or sham to accomplish some ulterior purpose . . . or where the purpose is to evade some statute or accomplish some fraud or illegal purpose.'" *Johnson Enterprises*, 162 F. 3d at 1320 (quoting *Dania Jai-Alai*, 450 So. 2d at 1117); *see Seminole Boatyard, Inc. v. Cristoph*, 715 So. 2d 987, 990 (Fla. 4th DCA 1998) (citing *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 468 (Bankr. M.D. Fla. 1994)). Absent fraud or improper conduct by the dominant shareholder, Florida preserves corporateness:

> The rule is that the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them . . . . In the absence of pleading and proof that the corporation was organized for an illegal purpose or that its members fraudulently used the corporation as a means of evading liability with respect to a transaction that was, in truth, personal and not corporate, [a plaintiff] cannot be heard to question the corporate existence but must confide his efforts to the remedies provided by law for satisfying his judgment from the assets of the corporation, if any can be found.

*Dania Jai-Alai, Inc. v. Sykes*, 450 So. 2d 1114, 1119-20 (Fla. 1984) (quoting *Riley v. Fatt*, 47 So. 2d 769, 773 (Fla. 1950)) (citations omitted). A June 30, 2011, order (Doc. 34) dismisses the original complaint and enumerates some circumstances that

might evidence a corporation's sham existence for an illegal, fraudulent, or improper purpose:

> Because the practice of commercial enterprise, both wholesome and unwholesome, features means and forms unbounded in variety, no list of attributes encompasses each fact or factor that might reveal or rebut the disregard or abuse of corporateness. The factors typically and initially examined in assessing corporate independence include (but are not limited to) (1) failure to observe usual corporate formalities, (2) inadequate capitalization, (3) intermingling of assets and property, (4) shared offices and contact information, (5) either a guarantee or a payment of the corporation's debt by the dominant shareholder or parent, (6) a lack of arms-length transactions, (7) consolidated financial statements and tax returns, (8) dependence on the parent to generate business, (9) a joint accounting and payroll system, (10) financing derived from the parent, (11) failure to operate as an independent profit center (but rather as a department of the parent corporation), (12) failure to pay dividends, (13) non-functioning or interlocking officers and directors, (14) employment of the same attorneys, and (15) a limited degree of discretion.

*Erben v. Raymond James European Holdings, Inc.*, 2011 WL 2601362, at *3 (M.D. Fla. June 30, 2011); *Hilton Oil Transport v. Oil Transport Co., S.A.*, 659 So. 2d 1141, 1153 (Fla. 2d DCA 1995).

With the evidence construed in favor of Erben, the summary judgment papers establish (1) prolonged auditing impropriety; (2) an initial and recurring limitation of capital to the minimum permitted by the Capital Markets Board; (3) the parents' control of the board and control of management; (4) interlocking officers and directors; (5) intermingling of assets, property, and employees; (6) the parents' guaranteeing RJ Yatirim's debt to banks; (7) one parent's commitment that another

- 10 -

parent will execute trades for RJ Yatirim; (8) a repeated lack of attention to corporate formality; and (9) the undercapitalization of RJ European and RJ International. Whether Erben achieves the threshold for disregarding corporateness in Florida is a question of fact for the jury.

### Joint Venturer Liability

Counts One and Three allege that RJ Financial incurs liability by engaging in a joint venture with either Park Yatirim or RJ Yatirim. Erben advances this argument because a joint venturer, unlike a shareholder in a corporation or anonim sirket, usually incurs liability to a third-party for the wrongs of the joint venture. "A joint venture, like a partnership, may be created by express or implied contract" if the contract contains "(1) a common purpose, (2) a joint proprietary interest in the subject matter, (3) the right to share profits and duty to share losses, and (4) joint control or right of control." *Williams v. Obstfeld*, 314 F.3d 1270, 1275-76 (11th Cir. 2002); *accord Kaufman v. Torkan*, 51 A.D. 3d 977 (2d Dep't 2008); 16 *N.Y. Jurisprudence* § 2088 (2013) (citing cases). The intent of the parties controls. *Ely v. Shuman*, 233 So. 2d 169, 170 (Fla. 3d DCA 1970) (citing *Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957)); *Phillips v. U.S. Fid. & Guar. Co.*, 155 So. 2d 415, 418 (2d DCA 1963); 16 *N.Y. Jurisprudence* § 2092 (2013) (citing cases).

Erben submits no evidence of a joint venture between RJ Financial and RJ Yatirim, and, although the evidence establishes that RJ Financial and Park Yatirim

initially formed a joint venture to create an anonim sirket, RJ Yatirim (even if born from a joint venture) is a separate and distinct entity, independent of the earlier joint venture between RJ Financial and Park Yatirim. Because Erben traded with RJ Yatirim and not RJ Financial, the corporateness of RJ Yatirim protects RJ Financial and RJ International and RJ European from liability for the actions of RJ Yatirim. Alleging direct liability and not "alter ego" liability, Counts One and Three fail.

### Negligent Supervision

Count Two alleges that three RJ Yatirim board members, each of whom worked for RJ European or RJ European's parents, directly and negligently supervised RJ Yatirim and Berkan.[3] Erben argues (1) that the Articles of Association assign a management duty to the board of directors and (2) that each director serves as an "agent" of a parent company. Consequently, Erben argues he need not hold the parents liable by the difficult task of disregarding RJ Yatirim's corporateness because the parents incur vicarious liability for the actions of the "agent."

The defendants respond and persuasively argue that the directorial duty of an RJ Yatirim director arises solely from the director's capacity as director of RJ Yatirim and not as an employee or officer of RJ European, RJ International, or RJ Financial. Erben must disregard the corporateness of RJ Yatirim before holding RJ European,

---

[3] The parties agree that Florida law governs the negligent supervision claim. (Doc. 83 at 13; Doc. 88 at 13; Doc. 90 at 17)

RJ International, or RJ Financial liable for the acts or omissions of an RJ Yatirim director. Alleging vicarious liability and not "alter ego" liability, Count Two fails.

## CONCLUSION

Erben's motion for summary judgment (Doc. 82) is **DENIED**. The defendants' motion for summary judgment (Doc. 83) is **GRANTED IN PART AND DENIED IN PART**. The clerk is directed to enter judgment in favor of the defendants and against the plaintiff on Counts One, Two, and Three.

ORDERED in Tampa, Florida, on June 3, 2013.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE